Good morning, Your Honors. Eric Slepian on behalf of Ms. Kinzer. I'm going to attempt to reserve four minutes for rebuttal. All right. This is a Social Security claim. I know the Court's very familiar with these. I'm trying to address three errors of law that were made by the ALJ in this particular case. The first is in regard to the ALJ's way of treating physician opinion evidence. You'll note in the decision the judge makes a number of errors regarding the medical evidence itself. For example, the ALJ states that there is no herniated disc and there is a herniated disc. There is a substantial cause for Ms. Kinzer's degree of pain that's applied to by the treating physicians as well as herself and her husband. The administrative law judge is required to give weight to treating physician opinion, and that's set forth in 20 CFR section 404.1527C. In this case, the administrative law judge references Dr. Ross, who opined that Ms. Kinzer would not be able to sustain even a sedentary range of employment, but does not mention the opinion of Dr. Biscoe, which is another treating physician who rendered significant restrictions and limitations. In reviewing the decision of the judge, it looks like he, for example, with Dr. Ross, he says, I'm not going to give the opinion controlling weight, but he doesn't tell us what amount of weight he's going to give it. In Social Security Policy Ruling 96-2P, it specifically states that an ALJ can give less than controlling weight to the opinion of a treating physician, provided, one, he finds inconsistencies in the medical evidence, and we would submit that there are no inconsistencies in this record, and, two, even if he does not give the opinion controlling weight, he must set forth the amount of weight because that treating physician opinion is still entitled to deference. It's interesting that the district court actually noted what you're saying, but then overrode that in effect. The district court did. The district court said that they didn't detail the reasons for discounting Dr. Ross, and on Dr. Biscoe didn't state a reason for his conclusion. That is interesting, and that's obviously one of the reasons why we're here, Your Honor. And that district court opinion is not subject to review because we do a de novo review here, but I certainly don't. It pointed out the same deficiencies that you're arguing. That's absolutely correct, Your Honor. And what's interesting with the district court is they said that there was an inconsistency by looking at Dr. Gruff's records. And Dr. Gruff, what happened is they picked little pieces of what was in the record For example, there was an indication that Ms. Kinzer was happy with her progress. At that point in time when that statement was made, what it says is she's happy she's making some progress. She had been making no progress at all. And if you look at the records immediately after that treatment note, it says she's down 70 to 80 percent of the time. It says she cannot vacuum. She has difficulty sustaining prolonged sitting, standing, and walking. She can walk up to a mile. She has difficulty grocery shopping and must go with her husband. Also, after that particular record that was cited by the district court, she remains in treatment and she's doing injections. And you can see by the progression, she gets a little bit of relief from the injection and then it comes right back. So a part of the first error, then, is this not crediting the treating physician and not giving the details for how these other physicians interfaced with the decision. What was the second error? The first error was not mentioning the amount of weight given and not assigning a specific weight to the treating physician opinion, and then isolating specific records, not looking at them in context, and just taking small portions to try to bolster In this case, it was the district court trying to bolster the ALJ's decision. Clearly, that's post hoc rationale, which is improper. But as you can see from the district court's decision, there is error in the weighing of the treating physician opinion. Kennedy, but, yeah, the treating physician, and then you go to credit as truth argument, although you say maybe it ought to go back for more discussions, too. I mean, you gave us an alternative there. But the cases I read regarding treating physicians, you had one treating physician. Here you have, I tried to make a list of them this morning, Alzheimer, Ross, Collinette, Escobar, Gruft, Battingham, Woodgruff, and Biscoe, although sometimes he's called Boscoe, and then the doctor, pardon me. That was my error. Okay. We all do. We all make mistakes. And then we have Dr. Monsoor. We can ignore him. Let's agree on that. But all of these other physicians, and they have different opinions, are treating physicians, aren't they? Yes. Now, that's different from any case that I've been able to find and my chambers has been able to find regarding the credit as true, because those cases all involve one treating physician and then an examining physician and then a consulting physician, as distinguished from four treating physicians. Are you with me on that? I understand what you're saying. So you would agree, then, that the credit as true rule would not apply under these facts? I would not. Okay. So in those other cases where they talk about crediting the treating physician opinion as true, there are a number of factors. But one, the Court's focusing on the error in the addressing of a particular treating physician, and here we have two that the Court erred in addressing. And the treating physician rule states that based on that error, it should be considered true. And the other issue is there is no conflict between any of the treating physicians, and that's what's very important in this case. The district court tried to indicate that there was a conflict with Dr. Gruff's opinion, but if you look at Dr. Gruff, he never says Ms. Kinzer can return to work. In fact, he's the one that says she improved her functional capacity from being able to lift four pounds to eight pounds. She can now walk up to 20 minutes at a time without stopping and resting. She suffers significant pain. She cannot sustain any position for prolonged periods of time, sitting, standing, or walking. That's what Gruff's records actually state. And if you look after that one record that the district court focused on, she's having injections. She's going back, and they're temporary improvement. So there is no conflict with any treating physician opinion. No treating physician states that she's disabled. Ginsburg-Carr, however, it depends on how you read the records, because there is a little give in the joint, given dates, and what she was there for. And I think that's Judge Quist's point, is there's this amalgamation, which it may be, in fact, that when you take all those put together and make a judgment on them, that she is, in fact, disabled. But the real question is whether we should be doing that on appeal. And you did suggest, I think, in the RFC a need to have that redone correctly, too. That was another error. Is that right? The administrative law judge erred in assessing the residual functional capacity. Clearly, he just said you can have a sedentary ability to work, which wasn't a function-by-function assessment and didn't properly consider the evidence. Right. But, you know, in addition, we also have the subjective complaints, which was an independent basis that I would ask the Court to credit the evidence as true and remand for a computation of benefits as well. So there are two different arguments. But the ALJ says, remind us what the ALJ says about the subjective complaints and believability on certain of them. Okay. So the administrative law judge first said that the subjective complaints weren't consistent with disability based upon her activities of daily living. Right. She did very limited activities. The case law is replete with references to the exact activities performed by Ms. Kisner do not evidence an ability to work. And the district court also noted that that was error in this particular case. The administrative law judge also said that he was rejecting subjective complaints based upon what he claims to be a lack of objective data. And the ALJ states that there's no nerve abnormality, muscle, or joint damage. The district court noted that's an error of law. Ms. Kisner has severe impairments, and that's just an improper basis under Cotton v. Bowen. And in addition to that, I noted that the ALJ didn't even properly reference the record, which included the herniated disc, the periformis syndrome, and those things that are reasonably related to her complaints of pain. And then the last argument that we had raised, before I get to that. So if you look at Small v. Chater, that case specifically discusses what happens when an administrative law judge does not properly consider the reported subjective complaints, and that case states that those subjective complaints should be credited as true, and there's no question that the crediting of that evidence as true would lead to a award for a computation of benefits. And then for the same reasons, we would show that there's error in the ALJ's consideration of the report of Ms. Kisner's husband. Because I have about one minute left. I do want to briefly discuss that credit as true rule. Lots of cases have discussed it, and it basically states that if the judge fails to properly consider evidence submitted, and the evidence is credited as true, if that establishes disability, the court will remand for a computation of benefits. There are a couple of cases that came back and said it's really more discretionary than that. So I would ask the Court to look at the case of Forney. It's a United States Supreme Court. I don't think I briefed it. But what's interesting in Forney is it states that if an administrative law judge remands a case for further proceedings as — I'm sorry, if a district court remands a case for further proceedings as opposed to a computation of benefits, the claimant has an appealable right. So based on that, this Court must have something within which to weigh the AL — the district court's exercise of discretion. So the courts that say it's purely discretionary, that can't be correct, because then you wouldn't have an appealable right. A district court judge can do anything on a whim. But if you follow the rules set forth in Smolin and Varney, where once those three factors are established, it's a remand for a computation of benefits, that would be in accord with Forney, basically stating that a claimant does have an appealable right, and the Court has to have some way to weigh whether the district court abused discretion or not. Thank you. Thank you. Good morning, Your Honors. My name is Laura Holland, and I represent the Commissioner. May it please the Court. The issue in this case is whether Ms. Kinzer has established her disability between her alleged onset date of November 1, 2002, and her date last insured of December 31, 2005. The Commissioner submits that she has not. Rather, the record shows that plaintiff's treatment was conservative, consisting of physical therapy, medications, and steroid injections, and improved her functioning during the relevant time period. Kinzer focuses on the various medical opinions in the record to support her claims. The opinions are not as clear-cut as she would have the Court believe. Instead, the medical record- Why doesn't she tell us, then? Or why doesn't the administrative law judge tell us? We're all lawyers here. We could figure it out ourselves, but that's not our responsibility, as I understand the law. And when it came to Ross and Briscoe, she said, well, I disreject. Administrative law judge. That was about it. Now, I could be a good enough lawyer, I think, to, you know, figure out what the case might be, but that's not my responsibility. Okay. I'll start with Dr. Ross's opinions. Dr. Ross gave three opinions that were all qualified as to Ms. Kinzer's disability status. In all three opinions, he recommended additional treatment, physical therapy, steroid injections, and stated, in the meantime, she was not capable of returning to her job as an electrician, which is heavy work, and no one, not even the commissioner, is saying that she can return to her last job. So the ALJ considered Dr. Ross's, all of them, qualified opinions and stated that he did not give them controlling weight. Now, that is admittedly different. Usually, you see ALJs giving no weight, little weight to opinions that they're discounting, but there's no requirement that the ALJ was required to say exactly how much weight he gave an opinion. The requirement is that if the ALJ is not going to give controlling weight to an opinion, he must give specific and a contradicted opinion in the record. He must give specific and legitimate reasons for not giving controlling weight to the opinion. And the ALJ did that here. He stated that Dr. Ross's opinions were inconsistent with the record as a whole, which showed that her pain was treated conservatively. But that's not really the nature of pointing out the inconsistencies that we've required in our case law. He basically says, well, they're internally inconsistent, and then he doesn't even tell you on visit Mansour. Is that the other fellow? Dr. Mansour, yes. Mansour, yeah. He doesn't give you any explanation as to the weight given to that. So you're kind of left in this limbo, which is precisely why the rules require him to lay out the specific reasons and the specific evidence. We're kind of left without anything. And as Judge Quitt says, we can figure it out. And if I had to figure it out, I wouldn't see the inconsistencies. So that's why we asked the ALJ to tell us what they are. I understand. And normally that just is an error that we would send it back for, unless we go to the credit as true, which we want to talk separately about. Right. Just going back to Dr. Ross's opinion, I would submit that the reasons the ALJ gave here, which were that it was inconsistent with the record and inconsistent with his own treatment notes, which showed mostly normal examination findings, are sufficient reasons for an ALJ to give to discount a treating physician. Well, if we disagreed with you on that, where would that leave us? I would point next to Dr. Gruff's opinion. Kinzer argues that this opinion is inconsistent with sedentary work, and that's just not the case. Sedentary work requires lifting no more than 10 pounds and primarily sitting with occasional standing and walking. Dr. Gruff, who it's quite interesting in this case, Dr. Gruff actually treated plaintiff in an inpatient 21-day chronic pain program. He saw her functioning throughout this time period. His opinion was based on actual testing of her abilities. And during the course of this 21-day program, at the end, he noted that she had improved significantly to the point where she was able to lift five pounds from the floor to the waist and 10 pounds mid-body, climb three flights of stairs, stand for 20 minutes without rest. But with rest, she was able to stand for 53 out of 60 minutes, walk about a mile, drive for 40 minutes, assuming she could sit for 40 minutes then, and exercise on a treadmill for 50 or for, I'm sorry, for 20 minutes. He went on to state that certainly with these abilities, she would not be able to return to her last job as an electrician, but nobody is stating that she could. So this opinion, which was from a treating physician who gave this opinion based on actual functional testing, is entirely consistent with the ALJ's opinion that she could perform sedentary work with no climbing ladders, ropes or scaffolds. And the ALJ, you know, acknowledged this opinion. And he then went on to also, I want to address Dr. Biscoe's opinion, which is another opinion on which plaintiff a lot relies, you know, and again, I would point out the incorrect characterization that plaintiff states that no opinion, no treating source opined that she could perform work consistent with the ALJ's assessment when, in fact, Dr. Gruff's opinion is entirely consistent with the ALJ's assessment. Now, going on to Dr. Biscoe, he first began treating plaintiff over a year and a half after the relevant time period ended, and he recommended only conservative treatment. He, the ALJ considered his opinions. He, he gave three opinions. Two of them were similar to Dr. Ross's opinions that she was not able to perform any work, which I would also note are conclusory opinions on an issue that's reserved to the commissioner and are not entitled to any special significance. But going back to his check the box form, Dr. Biscoe's in March of 2009, which was four years after, I'm sorry, a year and a half. Sorry, just back up. He stated that his opinion was retrospective in that it applied as of March or December 31st, 2005, which was the date by which she had to establish disability. And this was authored four years after that date. And he says it goes back to that time period when it's really impossible for him to know what Kinzer's abilities were as of a date four years prior. But even assuming that that should be given, you know, credence, his opinion was in a relevant time period, such as Dr. Gruff's opinion. And so the ALJ reasonably discounted that opinion as well. Just to address the credibility issue, and then I know the court wants to hear the credit is true, so I will say that for last, but the ALJ stated that, you know, he gave good reasons for discounting her claims of disabling limitations. He relied on the medical evidence, including evidence of effective treatment, including Dr. Gruff's opinion, stating that she had improved significantly during her time, 21 day time period there. Conservative treatments. Again, none of these treating doctors recommended surgery. They all stated that she could be treated with conservative treatments. And the objective findings were largely normal. Certainly, plaintiff has back pain and none is disputing that she does not have back pain, but largely normal examination findings aside from some tenderness and limited ranges of motion. Her activities of daily living were inconsistent with her claims of disabling limitations. She performed normal household duties, reported to her doctors that she was unpacking boxes, which exacerbated her pain. She reported to one doctor that she was looking for work, indicating that she herself believed she was capable of work. And certainly these opinions or these statements that the ALJ relies on are not, um, to the extent that the court believes they're not, um, indicate they don't indicate an ability to perform full-time work in Molina v. Asher, which is cited in our brief. A judge is entitled to rely on these opinions, even if they don't show the ability to perform full-time work to the extent that they show inconsistencies in the record with regard to plaintiff statements. Um, and just moving on now to the credit is true rule. Um, the, the court has discretion and that's clear. And the Connick case clearly states that it's within the court's discretion. Credit is true, is not mandatory. Um, and the evidence in this case simply does not support a application of the credit is true rule. Um, in order to apply the rule, you would have to show that these opinions were erroneously discounted or the pain testimony, and then show that even if that was credited, there are no outstanding issues to be resolved. Um, the, When do these things come to an end? This all started, I think, in 2001 or 2002. And one of the big reasons for the credit as true rule is to get these things over with. I mean, if this person is entitled to benefits, then a decision has to be made. And if she's not entitled to them, a decision has to be made. How long can this spread out? Well, I understand Your Honor's concern about the length of time. Um, Kinzer filed her application in 2007. You're correct that she alleges disability going back to 2002. Um, but the Strauss court has said in this circuit that the credit is true rule should not be used as a punishment and that claimants are entitled to disability only if they have established their disability under the act. And to use the credit as true rule to, um, expedite these claims is not a correct application of the rule. The, again, claimants are only entitled to disability if they are in fact disabled. And it is the agency that as the fact finder has been given the authority to adjudicate that. And it's certainly, um, these claims go on a long amount of time, but Congress was well aware of the length of time in these claims when it, you know, created the act and it did not impose any time limits on adjudicating these claims. Is there any kind of mediation process, uh, in the administration for these kinds of claims when they're at this juncture? Uh, not that I'm aware of, Your Honor. The, the agency has certain, um, procedures set up such as if a claim has sent back to the agency after the second time it is assigned to a different ALJ, um, things such as that. But there's no sort of mediation. What would happen if you were to remand the cases? It would go back to an ALJ who in this case would again look at this set time period, um, that we have all of the evidence stemming from and, and hold another hearing, take additional testimony, things such as that. Um, so if the court has no further questions. Thank you. I'll make it very brief. Um, one of the reasons for the creditor's true rule is to ameliorate the harsh result to those that, um, can't work. There's a, a very heavy financial burden as well as a medical burden. Um, and this case has been pending for a very long time. Uh, the case law does tell us that if you have an opinion from a treating physician that's after the date last insured, it, it does relate back and then analysis must be performed. I don't think it's cited in my briefing, but the case is Smith v. Bowen at 849 F2D 1222 at page 1225. Um, I would also, um, point out that Ms. Kinzer's treatment was not conservative. She had narcotic pain medications and she had injections into her spine. When we look at conservative treatment, there are two cases that I recall. Discussing it. One is Parra and one is Carmichael. And in both of those, the claimant was just taking over the counter medication. This is something that's quite different. She was on narcotics and the reason she had to come off narcotics eventually was because she was diagnosed with, um, autoimmune hepatitis C and those medications were contraindicated. So here you have somebody who could no longer take the type of medication that one may hope to give some type of relief. And she was reliant on these injections that just, they were temporary. They did not, um, take away her pain. There's no evidence of any exaggeration or malingering in this case. The judgment of the treating physician should be credited and the, um, subjective complaint should also be credited. Thank you. Thank you. Thank you for your argument. I also thank the, um, administration for its argument, Ms. Holland. The case of Kinzer v. Colon is submitted.
judges: Quist, McKeown, Gould